IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
June 19, 2002 Session

### TONY E. BROWN v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Marshall County**
**No. 14432     J. B. Cox, Judge**

_____

**No. M2001-03067-CCA-R3-PC  - Filed November 5, 2002**

_____

The petitioner appeals the denial of his petition for post-conviction relief, arguing that the post-conviction court erred in finding that he received effective assistance of trial counsel.  We conclude that the petitioner has failed to meet his burden of demonstrating that his trial counsel provided ineffective assistance.  Accordingly, we affirm the denial of the petition for post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID G. HAYES and ROBERT W. WEDEMEYER, JJ., joined.

Cynthia M. Fort, Nashville, Tennessee, for the appellant, Tony E. Brown.

Paul G. Summers, Attorney General and Reporter; Christine M. Lapps, Assistant Attorney General; William Michael McCown, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On June 23, 1999, the petitioner, Tony Brown, was charged by a Marshall County Grand Jury in a three-count indictment with one count of selling a Schedule II controlled substance (cocaine), a Class B felony, on February 17, 1999; one count of delivering a Schedule II controlled substance (cocaine), a Class B felony, on February 17, 1999; and one count of delivering a Schedule II controlled substance (cocaine), a Class B felony, on February 18, 1999.  At the conclusion of his November 4, 2000, trial, a Marshall County Circuit Court jury found the defendant not guilty of the first two counts of the indictment, which charged him with the sale and delivery of cocaine on February 17, but guilty of the third count, which charged him with the delivery of cocaine on February 18.  The trial court subsequently sentenced the defendant as a Range I, standard offender to twelve years in the Tennessee Department of Correction.  The trial court also approved a $100,000

fine that was assessed by the jury for the offense. No direct appeal of the petitioner's conviction or sentence was filed.

On December 14, 2000, the petitioner filed a petition for post-conviction relief, alleging ineffective assistance of trial counsel. An evidentiary hearing was held on June 25, 2001. On November 2, 2001, the post-conviction court's order denying the petition was filed. The petitioner filed a notice of appeal on December 4, 2001. The State notes that the petitioner's notice of appeal was filed one day beyond the thirty-day time limit for appealing a final order. See Tenn. R. App. P. 4(a). However, this court may, "in the interest of justice," waive an untimely filing of a notice of appeal. Id. Because the State has not alleged it was prejudiced by the petitioner's untimely filing, we will address the merits of the petition.

Although the petitioner asserted a number of claims of ineffective assistance in his petition and at the post-conviction hearing, he confines himself on appeal to arguing that trial counsel provided ineffective assistance by failing to object to the admission of irrelevant and highly prejudicial evidence at trial; failing to inform him of the recent suspension and reinstatement of his law license, including the restrictions under which he was required to practice; and practicing law in violation of the orders suspending and reinstating his license. Four witnesses testified at the petitioner's post-conviction hearing: the petitioner, trial counsel, disciplinary counsel for the Tennessee Board of Professional Responsibility, and the attorney who was appointed to supervise trial counsel following the reinstatement of his law license. To place their testimony in context, we will first briefly summarize the evidence at the petitioner's trial.

**Trial**

The State's case against the petitioner was presented primarily through the testimony of two witnesses: Special Agent Thomas Biele of the Seventeenth Judicial District Drug Task Force and James Baker, a confidential informant who was working for the Task Force at the time the drug transactions in this case took place. According to their testimony, Baker contacted Agent Biele on February 17, 1999, to inform him that the petitioner had just "fronted" some crack cocaine to Baker to sell, with the agreement that Baker would pay him $400 for the cocaine the following day. Shortly after receiving the call, Agent Biele drove to Baker's house and retrieved 2.8 grams of crack cocaine. The next day, February 18, 1999, Agent Biele and other Drug Task Force officers took Baker to a pay phone, where they recorded him arranging with the petitioner to have the petitioner come to his home to receive his payment.[1] The agents then returned Baker to his home, with Agent Biele accompanying him inside to search him, attach a recording device, and give him $400 in recorded bills, while the other officers set up a surveillance of the surrounding area.

_____

[1]The tape recording of Baker's telephone conversation with the petitioner was played before the jury. Although neither the tape recording nor a transcript of the conversation is included in the record before this court, it is apparent from the witnesses' testimony that the petitioner made no direct admission on the tape that the money was payment for drugs.

From his position inside the house, Agent Biele watched as the petitioner pulled up in front of Baker's residence in a brown, 1986 Pontiac Bonneville, and Baker handed him the recorded funds. When the petitioner left, Baker told Agent Biele that the petitioner would soon be coming back to front him more cocaine. Shortly thereafter, the petitioner returned, pulling his car into the driveway and honking his horn. When Baker went out to the driveway, the petitioner handed him 3.3 grams of crack cocaine and drove away. Both Agent Biele and Baker testified that Baker was searched before each encounter to ensure that he had no contraband on his person when he went to meet the petitioner at his car. Both transactions were recorded, and the tape recordings played before the jury at trial.[2]

The following day, February 19, 1999, the petitioner was stopped and arrested by Drug Task Force Agents as he was driving alone in the same brown Pontiac Bonneville on Highway 50 outside of Lewisburg. Agents found $1181 in cash in the petitioner's wallet, of which $250 consisted of the recorded funds that Baker had given him the previous day. No drugs were found, either on the petitioner's person or in his car. However, Agent Biele testified that he found a set of digital scales, of the type commonly used to weigh drugs, on the front seat of the petitioner's vehicle. The scales were admitted into evidence with no objection offered by trial counsel. Drug and Violent Crime Task Force Director Tim Lane, who participated in the drug operation, testified that the petitioner admitted after his arrest to having been involved in the distribution of crack cocaine in Marshall County for the preceding four or five months. Director Lane also testified that a set of digital scales was discovered in the petitioner's vehicle, but no drugs were found.

The State rested its case at approximately 4:45 p.m. Informing the trial court that he badly needed to use the restroom, the petitioner hurriedly left the courtroom and subsequently disappeared from the courthouse. After sending court officers to search the premises and granting a forty-minute recess for trial counsel to attempt to locate the petitioner, the trial court continued the petitioner's trial *in absentia*.[3] Trial counsel rested the petitioner's case without the presentation of any proof, and the jury returned verdicts of not guilty on the first two counts of the indictment and guilty on the third count.

## Evidentiary Hearing

The petitioner testified at his evidentiary hearing that he retained trial counsel to represent him sometime after his preliminary hearing. He said that trial counsel did not tell him that his law license had been suspended and reinstated, or that he was required to practice under the supervision of another attorney. Moreover, trial counsel's supervising attorney was never present during any of the petitioner's office meetings with trial counsel, never had any conversation with the petitioner, and never appeared in court with the petitioner and trial counsel.

---

[2] Again, neither the tape recordings nor the transcripts are included in the record before this court. However, from the witnesses' cross-examination testimony, it is again apparent that the petitioner did not directly admit that the $400 he received from Baker was in payment for drugs.

[3] The petitioner was also absent from his sentencing hearing, where he was again represented by trial counsel.

The petitioner testified that he was surprised when the State introduced the drug scales at his trial, since he was not charged with possession of drug paraphernalia. He said that he urged trial counsel several times to object to the introduction of the evidence, telling him that the scales were not found in his car and that he was not charged with their possession, but that trial counsel "never said a word." Trial counsel also failed to make any motions to exclude the scales prior to trial, or to request a curative jury instruction after the scales had been introduced. The petitioner said that when he realized trial counsel was not going to do anything about the scales, he lost confidence and walked out of the trial.

The petitioner denied that he hurt his defense by leaving before the conclusion of the trial, testifying on cross-examination that trial counsel had already decided that he would not be a witness in the case. He said he thought trial counsel could have put his wife[4] on the stand to explain that the scales were found in her car, and that she, rather than the petitioner, had been charged with their possession. The petitioner acknowledged that the scales did not hurt him on counts one and two of the indictment. However, he thought that the scales must have prejudiced the jurors against him, resulting in his conviction on count three. The petitioner explained his reasoning:

> Q. With all of that proof, how did the scales hurt you?
>
> A. Evidently it must have been showing the jury. You know, evidently they weren't believing nothing, really, of what those officers was [sic] testifying to because, see, all of the charges are related, you know. On the time limit is like a 24 period of time zone, and all of those charges are related.
>
> Do you see what I am saying?
>
> Q. No, sir, I don't.
>
> A. All of these charges are related, they say. They say that all of them are related.
>
> Q. Yeah.
>
> A. It happened within a 24-hour period of time zone.
>
> Q. Okay.
>
> A. So the jury wasn't believing nothing they were saying, evidently in the other two deliveries. You know what I'm saying. So here they

[4] The petitioner and his wife, Ms. Pamela Cox, were not married at the time the drug transactions in this case took place.

go show some scales, you know, that could have prejudiced me against the jury.

Trial counsel testified that he was a licensed attorney in the State of Tennessee at the time he represented the petitioner. He estimated he had, at that time, represented seventy to one hundred criminal defendants, and been involved in thirty to thirty-five criminal trials, in both state and federal court. On January 3, 1999, some six months prior to the date his representation of the petitioner began, his law license was temporarily suspended. Subsequently, on March 30, 1999, his license was reinstated, subject to certain practice requirements, including that he practice under a mentor, Robert Marlow. As required, he discussed the petitioner's case and his trial strategy with Marlow. He was not aware of any requirement that Marlow meet with his clients or that he be present at court proceedings with them. There was also no requirement that he notify new clients of the temporary suspension and subsequent reinstatement of his law license, or that he inform them he was required to practice under the supervision of a mentor. The petitioner did not ask him about the status of his license, but, had he done so, trial counsel would have provided him that information.

Trial counsel testified that his defense strategy was to attack the credibility of the confidential informant by attempting to show that he was cooperating out of self-interest, in the anticipation of receiving a lighter sentence for drug charges that were pending against him, and by using his criminal history to impeach his testimony. In addition, he attempted to show the jury that Agent Biele had no direct knowledge of the drug transactions, but was instead relying on information relayed to him by the confidential informant. Trial counsel admitted his error in failing to object to the admission of the scales, testifying, "The introduction of the scales, I must admit, just got by me. I made a flat-out mistake." His memory was that the petitioner first informed him that the scales were not found in his car during Director Lane's testimony. However, because the State made no attempt to tie the scales to the petitioner's activities on February 17 or 18, he did not think the evidence advanced the State's case or harmed the petitioner.

Trial counsel testified that the petitioner left the courthouse before he had the opportunity to discuss the State's case with him, or the possibility of either the petitioner or his wife taking the stand in the petitioner's defense. He said that his decision not to put the petitioner's wife on the stand was based in part on his prior conversations with her, and in part on the fact that she was arrested with the petitioner and alleged by the confidential informant to have accompanied the petitioner as he delivered drugs. Trial counsel was satisfied that he thoroughly investigated and prepared the case for trial. He believed his trial strategy of attacking the credibility of the confidential informant proved successful, as evidenced by the not guilty verdicts on the first two counts of the indictment.

Trial counsel testified on cross-examination that his law license was suspended for his failure to respond to a complaint lodged by the Board of Professional Responsibility. He acknowledged that the order reinstating his license required that Marlow co-sign all of his pleadings and court filings, and that he had signed Marlow's name, "by permission," to three evidentiary motions he filed in the petitioner's case the day before his trial. He testified, however, that he had discussed the motions

with Marlow, and that he signed the documents with Marlow's full knowledge and permission. In response to a question by the trial court, trial counsel testified that he first learned of the existence of the scales prior to the start of the trial, sometime in August.

Charles High, disciplinary counsel for the Tennessee Board of Professional Responsibility, testified that trial counsel was under no duty, under either the March 30, 1999, order or the Rules of Professional Responsibility, to inform new clients of the previous suspension and reinstatement of his law license. Referring to the order of reinstatement, he testified that he "would think this order says that co-sign means co-sign." However, he agreed that it would make a difference if trial counsel had gone over the motions with his mentor before receiving permission to sign them on his behalf.

Trial counsel's mentor, Robert Lee Marlow, testified that he had been licensed to practice law since 1980, and that the main focus of his practice was criminal law. Pursuant to the March 30, 1999, order reinstating trial counsel's law license, he acted as trial counsel's practicing monitor for one year, discussing his cases with him, and co-signing all pleadings and motions. During that time, he and trial counsel worked out of the same office and shared a secretary and receptionist. He was aware of trial counsel's representation of the petitioner, and remembered having briefly discussed the case with him. He had no memory of the specific pleadings filed in the case. However, he testified that he had given trial counsel permission to sign his name to routine motions, and that he believed he had written a letter to that effect to trial counsel, as well as to the Board of Professional Responsibility. Marlow said that he and trial counsel usually discussed which motions would be filed beforehand, and that trial counsel signed his name by permission only to those motions of which he had previously been made aware.

At the conclusion of the hearing, the post-conviction court denied the petition, concluding that the petitioner failed to meet his burden of demonstrating ineffective assistance of trial counsel. Specifically, the post-conviction court found that trial counsel's failure to object to the scales was "probable error," but that the petitioner had failed to meet his burden of demonstrating that counsel's deficiency in this regard prejudiced the outcome of his trial. With respect to all other allegations of ineffective assistance, the post-conviction court found that trial counsel's performance fell within the range of competence demanded of attorneys in criminal cases.

## ANALYSIS

The petitioner's sole issue on appeal is whether the post-conviction court erred in finding that he received the effective assistance of trial counsel. He contends that trial counsel was deficient for failing to object to the introduction of the digital scales, on the basis that they were not found in his car and were not relevant to the charges pending against him. He asserts that trial counsel's failure to object to the scales prejudiced the outcome of his trial, arguing that the State introduced the scales in an attempt to show that he was a dealer and packager of drugs, and that "[s]uch evidence should be deemed prejudicial in a trial where the defendant is charged with delivering a controlled substance." The petitioner additionally asserts that the evidence shows that trial counsel was practicing law in violation of the January and March orders suspending and reinstating his license,

and that he deceived the petitioner regarding the status of his law license. The petitioner argues that the post-conviction court should have considered the cumulative effect of trial counsel's alleged transgressions to determine that trial counsel provided ineffective assistance at his trial. The State responds by arguing that the post-conviction court did not err in finding that the petitioner failed to meet his burden of demonstrating ineffective assistance of counsel. We agree with the State.

## I. Post-Conviction Standard of Review

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns, 6 S.W.3d at 461.

## II. Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient, and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); see also State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S. Ct. at 2064.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S.

at 688, 104 S. Ct. at 2065; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)).  The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

Because both prongs of the test must be satisfied, a failure to show either deficient performance or resulting prejudice results in a failure to establish the claim.  See Henley, 960 S.W.2d at 580.  For this reason, courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697, 104 S. Ct. at 2069; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

## A.  Failure to Object to Drug Scales

The petitioner contends that trial counsel provided ineffective assistance by failing to object to the introduction of the scales, which he asserts were irrelevant to any issue at his trial, and highly prejudicial to his case.  In considering this claim, the post-conviction court first noted that the petitioner's testimony that the scales were not found in his car was not corroborated by any other witness at the evidentiary hearing.  The court then made the following findings of fact and conclusions of law:

> Finally, petitioner complains that trial counsel failed to object to the introduction of a set of scales.  These scales were not taken from the defendant, but from his girlfriend.  The introduction of this evidence presents the greatest dilemma for the Court.  As to the defendant, the scales were probably inadmissible and came into evidence without object.  Trial counsel candidly admitted error. However, not all errors equate to the necessity of a new trial. Petitioner argues that the introduction of these scales were per se prejudicial so as to convince the jury that he was a dealer in narcotics. However, the results of this trial does [sic] not attest to his argument. Since the petitioner was acquitted of two of the three charges by the jury, it is apparent that gave little, if any weight, to the theory that possession of scales equates ipso facto to drug dealing, else the jury would have not returned verdicts of not guilty in counts one and two of the indictment.  Viewed in the light of the state's overwhelming other evidence, any prejudiced [sic] that occurred to the petitioner was harmless.

The record supports the post-conviction court's findings and conclusions regarding this claim.  First, the petitioner did not meet his burden of showing by clear and convincing evidence that trial counsel's performance was deficient by virtue of his failure to object to the State's introduction

of the scales. As the post-conviction court noted, the petitioner's testimony was the only evidence in support of his claim that the scales were not found in his car. Agent Biele and Director Lane both testified at the petitioner's trial that the scales were found in the petitioner's vehicle when they arrested him outside Lewisburg on February 19, 1999. Agent Biele specifically testified that the petitioner was alone in his car when arrested, and neither officer mentioned anything about the petitioner's wife having been stopped at the same time in another car. The petitioner asserted at the evidentiary hearing that trial counsel sent his wife out during the trial to get a copy of her arrest warrant, which, according to the petitioner, proved that the scales were found in her car. However, the petitioner did not introduce the arrest warrant at the evidentiary hearing, and trial counsel, although conceding he erred in failing to object to the scales, did not explain the circumstances surrounding the arrest of the petitioner's wife, or testify that he had any information that the scales were not found in the petitioner's car, other than that which was verbally communicated to him at trial by the petitioner.

Moreover, according to trial counsel's testimony, the petitioner did not inform him that the scales were not found in his car until Director Lane had testified, which the trial transcript reveals occurred after the scales had already been introduced and made an exhibit in the case. Trial counsel said that the State did not attempt to link the scales to the petitioner's transactions on February 17 or 18, and he did not think the scales advanced the State's case. He explained his thought processes at the time:

> There was no attempt made at the time of trial, through State's witnesses, to tie the scales in any way to [the petitioner's] activity on either the 17th of February or the 18th of February. And, parenthetically, he was not even charged with possession of the scales on the 19th of February.
>
> When [the petitioner] told me that the scales did not come from his car, this was at a time when [the petitioner] had been sitting next to me throughout most of the testimony, all of it. And he would say things, and he would essentially interrupt my train of thought and my concentration. I tried to keep him as calm as possible. I said, "Let me just work on this. Just settle down."
>
> So when he made the statement that the scales did not come from his car, I literally had to turn to him for a second. And I looked at him, and I thought back to how the State had tied the scales in, if at all, to any other activity. And I didn't see where they tied it in.

When assessing a claim of ineffective assistance of counsel, this court must indulge in a strong presumption that the conduct of counsel fell within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, 104 S. Ct. at 2066, and may not second-guess the tactical and strategic choices made by trial counsel unless they were uninformed because of inadequate

preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Trial counsel testified that he met with the petitioner six or seven times prior to trial, reviewed the transcript of the preliminary hearing, and met with the assistant district attorney to receive and review discovery in the case, including the audiotapes of the alleged drug transactions, the criminal history of the confidential informant, and the statements of the arresting officers. The post-conviction court found that trial counsel adequately investigated and prepared the case, and the record supports this finding. We conclude, therefore, that trial counsel's failure to take any action with regard to the scales did not constitute a deficiency in performance.

Furthermore, even if the petitioner had been successful in showing that trial counsel was deficient for failing to object to the scales, he still failed to meet his burden of showing by clear and convincing evidence that he was prejudiced as a result of the admission of the scales. As the post-conviction court observed, there was overwhelming evidence of the petitioner's guilt on count three of the indictment, including testimony by Agent Biele that he observed the February 18 transactions between the petitioner and the confidential informant, and testimony by Director Lane that the petitioner admitted after his arrest that he had been involved in the delivery of drugs in the county for several of the preceding months. At the evidentiary hearing, the petitioner expressed his opinion that the drug scales prejudiced the jury against him, causing them to believe the testimony of the officers on count three of the indictment, when they did not find them believable on counts one and two. The petitioner's theory ignores the fact that the jury's deliberations on all three counts occurred after the introduction of the scales. A far more likely scenario is that trial counsel's attacks on the credibility of the confidential informant proved successful, causing the jury to find that his testimony, alone, was not sufficient to convict the petitioner on counts one and two of the indictment, which charged the petitioner with the sale and delivery of cocaine on February 17. In light of the strong evidence against the petitioner on count three, it is unlikely that the scales affected the outcome of the case.

### B. Failure to Inform Petitioner of Status of Law License

As further support for his claim of ineffective assistance of counsel, the petitioner alleges that trial counsel's cross-examination testimony made it "apparent [trial counsel] had in fact been practicing law in violation of the January and March Orders and deceived [the petitioner] about the status of his license." We respectfully disagree.

During the portion of testimony cited by the petitioner in support of this allegation, trial counsel testified that he had been retained by a defendant in a federal case in November 1998, and he completed that trial approximately three weeks before the petitioner's trial began. He said he informed that client of the suspension of his law license when it occurred, and of its subsequent reinstatement. During the period of his suspension, Marlow represented the client, and trial counsel did not practice law. On direct examination, trial counsel testified that the petitioner did not ask him about the status of his law license, and he did not volunteer the information about his prior suspension and reinstatement because he was not required to do so. Charles High, disciplinary counsel for the Board of Professional Responsibility, confirmed that trial counsel was under no duty

to inform new clients about the previous suspension of his law license. Both trial counsel and Marlow testified that trial counsel discussed his cases with Marlow in accordance with the requirements of the order reinstating his license, and that he received Marlow's permission before signing Marlow's name to the three motions he signed "by permission" in the petitioner's case. Although Marlow did not meet with the petitioner or attend his court proceedings, such attendance was not included in the conditions imposed on trial counsel in the March 30, 1999, order reinstating his license. Thus, there was no evidence that trial counsel either deceived the petitioner about the status of his law license, or that he practiced law in violation of the orders suspending and reinstating his license.

## CONCLUSION

Having reviewed the entire record in this case, we conclude that the petitioner has failed to meet his burden of demonstrating that he was denied the effective assistance of counsel. Accordingly, we affirm the post-conviction court's denial of the petition.

_____
ALAN E. GLENN, JUDGE